848 F.2d 901
 22 Soc.Sec.Rep.Ser. 100, Medicare&Medicaid Gu 37,141
Ruben THORBUS, M.D., Appellant,
v.
Otis BOWEN, Secretary, United States Department of Health
and Human Services, Richard P. Kusserow, Inspector
General, United States Department of
Health and Human Services, Appellees.
 No. 87-5503.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1988.
Decided June 7, 1988.
Rehearing Denied July 18, 1988.
 
 Robert N. Meals, Atlanta, Ga., for appellant.
 Al Jaffe, HHS, Chicago, Ill., for appellee.
 Before LAY, Chief Judge, HEANEY and MAGILL, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 Dr. Ruben Thorbus sought injunctive relief against the Secretary of the United States Department of Health and Human Services (HHS) to bar his exclusion as a participating physician in the Medicare program. He asserts jurisdiction in the district court based on 42 U.S.C. Sec. 405(g) (1982) and 28 U.S.C. Secs. 1331, 1361 (1982). The district court[1] dismissed the complaint on the ground that the court lacked jurisdiction because Dr. Thorbus failed to exhaust his administrative remedies as required by 42 U.S.C. Sec. 405(g). This court granted Dr. Thorbus's motion for a stay from exclusion pending appeal.
 
 
 2
 Dr. Thorbus is a physician in rural northwestern Minnesota. Sixty percent of his clinic patients are Medicare or Medicaid recipients and fifteen percent are covered by Blue Cross and Blue Shield (BCBS).
 
 
 3
 BCBS has been appointed by HHS to administer the Medicare/Medicaid program in Minnesota. Acting in its capacity as a Medicare administrator, BCBS requested reviews in 1983 of some of Dr. Thorbus's cases by a Peer Review Organization (PRO) and a medical consultant. Both reviews concluded, inter alia, that in certain cases in 1983 and 1984, Dr. Thorbus had overused particular diagnostic endoscopic procedures.[2]
 
 
 4
 BCBS referred the matter to the Office of Inspector General (OIG) of HHS. In December of 1983 HHS placed all of Dr. Thorbus's claims for Medicare reimbursement on a program of review prior to payment. In October of 1986 OIG notified him that: (1) it was proposing to exclude him from reimbursement under the Medicare program for ten years; and (2) he had a right either to submit documentary evidence and written argument to OIG or to request an opportunity to present oral argument and evidence to an OIG official.
 
 
 5
 Dr. Thorbus chose the latter alternative and, with his attorney, made an oral presentation and submitted written documentation to an OIG official in January of 1987. By letter dated October 30, 1987, OIG notified Dr. Thorbus that it was excluding him from Medicare reimbursement for five years, and that it would be publishing notice of his exclusion.[3] He was notified that if he was dissatisfied with the decision he could request a hearing before an Administrative Law Judge (ALJ) of the Social Security Administration. He has requested such a hearing.[4] Thereafter, Dr. Thorbus filed suit seeking equitable relief in federal district court; the district court dismissed the suit for lack of jurisdiction on the grounds that Dr. Thorbus had not exhausted his administrative remedies and had not presented a colorable constitutional claim or shown irreparable harm. This court stayed Dr. Thorbus's exclusion and publication of the notice pending appeal.
 
 
 6
 The initial question we must ask is whether the federal courts have subject matter jurisdiction to grant an injunction during the pendency of the administrative procedures within HHS. In Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court discussed the prerequisites for judicial review under section 405(g). There the Court found that a final decision by the Secretary made after a hearing was "central to the requisite grant of subject-matter jurisdiction * * *." Id. at 764, 95 S.Ct. at 2466. The Court then noted:
 
 
 7
 Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.
 
 
 8
 Id. at 765, 95 S.Ct. at 2467. In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), however, the Supreme Court recognized an exception to the statutory requirement of exhaustion of administrative remedies.
 
 
 9
 To assert the exception under Mathews, a claimant must: (1) raise a colorable constitutional claim collateral to his substantive claim of entitlement; (2) show that he would be irreparably harmed by enforcement of the exhaustion requirement; and (3) show that the purposes of the exhaustion requirement would not be served by requiring further administrative procedures. Id. at 329-31, 96 S.Ct. at 900; see also Bowen v. City of New York, 476 U.S. 467, 484, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986).
 
 
 10
 This court has held that a constitutional claim is colorable if it contains "some merit." Jensen v. Schweiker, 709 F.2d 1227, 1230 (8th Cir.1983). In Jensen, we acknowledged the difference between the finding of a colorable claim and a decision on the merits. Id. at 1230 n. 2; see also Koerpel v. Heckler, 797 F.2d 858, 863 (10th Cir.1986) (court analyzed underlying issue of property and liberty interests; held no property interest but a colorable liberty interest sufficient for jurisdiction); Boettcher v. Secretary of HHS, 759 F.2d 719, 722 (9th Cir.1985) (colorable claim if not "wholly insubstantial, immaterial or frivolous"); cf. Varandani v. Bowen, 824 F.2d 307, 310 (4th Cir.1987) (court doubtful of whether colorable due process violation existed in doctor's suspension from Medicare reimbursement, but actually rejected on merits), cert. dismissed under Supreme Court Rule 53, --- U.S. ----, 108 S.Ct. 1000, 98 L.Ed.2d 968 (1988) (on motion to dismiss made by petitioner or both parties).
 
 
 11
 Although we deem the facts marginal to support a colorable claim,[5] for purposes of our discussion, we assume without deciding that Dr. Thorbus has stated a constitutional claim sufficiently colorable for the purposes of jurisdiction in federal court. We do so simply because we find that Dr. Thorbus has failed to sustain proof of a constitutional violation and further has failed to establish irreparable harm sufficient to establish that the district court abused its discretion in denying injunctive relief.
 
 
 12
 Although this is a case of first impression in this circuit, four of our sister circuits have reviewed due process challenges to exclusion of physicians from Medicare reimbursement. Cassim v. Bowen, 824 F.2d 791 (9th Cir.1987); Varandani v. Bowen, 824 F.2d 307 (4th Cir.1987), cert. dismissed, --- U.S. ----, 108 S.Ct. 1000, 98 L.Ed.2d 968 (1988); Koerpel v. Heckler, 797 F.2d 858 (10th Cir.1986); Ritter v. Cohen, 797 F.2d 119 (3d Cir.1986). These decisions are unanimous in holding that the procedures established for exclusion are constitutionally sufficient.[6] They are well-reasoned and need no further elaboration. Suffice it to say that the statutory review process provided in the administrative procedure Congress established is constitutionally sufficient.
 
 
 13
 Furthermore we find that Dr. Thorbus has not shown irreparable harm sufficient for the issuance of injunctive relief. The relevant factors in determining the propriety of the issuance of a preliminary injunction are clearly delineated in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir.1981) (en banc). Ultimate success on the merits is not a "wooden" criterion to be examined on a prayer for injunctive relief. "The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public." Dataphase, 640 F.2d at 113. Here, it is argued that publication of Dr. Thorbus's exclusion would cause him both loss of income and harm to his reputation.[7] Assuming this to be true, however, when that is balanced against the potential for unnecessary harm to his patients, the alleged irreparable injury to Dr. Thorbus loses its significance.[8] We conclude that the district court did not err in refusing to issue an injunction in this case.
 
 
 14
 Judgment affirmed.
 
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota
 
 
 [2]
 This determination was made pursuant to section 1862(d)(1)(C) of the Social Security Act, 42 U.S.C. Sec. 1395y(d)(1)(C) (1982), recently reenacted as 42 U.S.C.A. Sec. 1320a-7(b)(6)(B) (1988 Supp.)
 
 
 [3]
 This decision was made under authority of the Social Security Act. The first basis for that authority is section 1320a-7(b), which states in pertinent part:
 [ (b) ] The Secretary may exclude * * *
 * * *
 [ (6) ] Any individual or entity that the Secretary determines--
 * * *
 (B) has furnished or caused to be furnished items or services to patients (whether or not eligible for benefits under subchapter XVIII of this chapter or under a State health care program) substantially in excess of the needs of such patients or of a quality which fails to meet professionally recognized standards of health care;
 * * *.
 42 U.S.C.A. Sec. 1320a-7(b) (1988 Supp.).
 The second statutory authority under which the Secretary may exclude health care practitioners and other persons who provide care which is inferior, excessive, or harmful to beneficiaries is section 1156 of the Social Security Act, 42 U.S.C. Sec. 1320c-5 (1982). Pursuant to that section a physician providing services to Medicare beneficiaries must assure that these services be provided "economically and only when, and to the extent, medically necessary;" 42 U.S.C. Sec. 1320c-5(a)(1) (1982), "be of a quality which meets professionally recognized standards of health care;" 42 U.S.C. Sec. 1320c-5(a)(2) (1982), and "be supported by evidence of medical necessity * * * [,]" 42 U.S.C. Sec. 1320c-5(a)(3) (1982).
 
 
 [4]
 He may also request Appeals Council review of an adverse decision of an ALJ. 42 C.F.R. Sec. 1001.3 (Oct. 1, 1987 Revision) (incorporating 42 C.F.R. Part 498 (Oct. 1, 1987 Revision)). A physician who has exhausted these administrative remedies may seek judicial review of the final agency decision of the Appeals Council. Section 1128(f) of the Social Security Act, 42 U.S.C.A. Sec. 1320a-7(f)(1) (1988 Supp.); see also 42 C.F.R. Secs. 498.5(i)(2), 1001.3 (Oct. 1, 1987 Revision)
 
 
 [5]
 Dr. Thorbus's claim is that he was denied due process because he is being excluded from the medicare program without proper notice and a full and fair hearing
 
 
 [6]
 Our decision concerning the merits of Dr. Thorbus's claim sustains the district court's decision on the merits insofar as it determined that there was no procedural due process violation. That court's holding that Dr. Thorbus did not present a colorable constitutional claim necessarily included a holding that a preliminary injunction should not issue
 
 
 [7]
 Dr. Thorbus may still practice medicine and charge his patients. Only the Medicare and Medicaid payments are being withdrawn. According to Dr. Thorbus's affidavit 60% of his gross income at the clinic comes from Medicare and Medicaid payments. In Ritter v. Cohen, 797 F.2d 119, 123 (3d Cir.1986), the court denied relief to a doctor 99% of whose patients were eligible for Medicaid reimbursement. The court pointed out he could still treat private patients and he would be reimbursed for any work compensable under Medicaid if he ultimately was vindicated
 
 
 [8]
 Dr. Thorbus asserts that no finding was made that his services were excessive or of unacceptable quality. However, the medical consultant's review belies this assertion. He reviewed 13 case histories of procedures performed by Dr. Thorbus, and determined the following: (1) 10 of those cases involved excessive or unnecessary services; (2) 7 involved poor quality care services; (3) 10 involved a potential hazard to the patient; and (4) 11 involved a flagrant violation under the Social Security Act. Although these determinations were modified on October 30, 1987, it is clear that Dr. Thorbus was aware of the severity of the charges. Dr. Thorbus claimed that he was not apprised of the details of the review but the letter sent to him on October 31, 1986, stated that "[i]n five cases * * * the medical consultant found the care placed the patients in imminent danger * * *." II Joint Appendix at 237